**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

STANLEY J. KOWALEWSKI,    :    CIV. NO. 23-20320 (RMB)
    :
        Petitioner    :    **OPINION**
    :
    v.    :
    :
WARDEN, FCI FORT DIX,    :
    :
        Respondent    :

RENÉE MARIE BUMB, Chief United States District Judge

    This matter comes before the Court upon Petitioner Stanley J. Kowalewski's petition for writ of habeas corpus under 28 U.S.C. § 2241 and his claims asserted under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* (Pet., Dkt. No. 1; Suppl. Pet., Dkt. No. 2.) Respondent filed an answer in opposition to relief ("Answer" Dkt. No. 6), and Petitioner filed a reply brief. ("Reply Brief" Dkt. Nos. 9, 11.) Petitioner is a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix.") He seeks application of First Step Act ("FSA")[1] time credits, removal of a public safety factor ("PSF") from his custody classification, and immediate placement in home confinement. (Dkt. No. 2 at 3.) For the reasons discussed below, the Court will schedule an evidentiary hearing on

---

[1] The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018).

Ground One of the petition, and dismiss in part and deny in part the remainder of the petition.

## I.   DISCUSSION

### A.    First Step Act Time Credits

The FSA is a comprehensive prison reform package enacted by Congress in December 2018.  *See Musgrove v. Ortiz*, No. CV 19-5222 (NLH), 2019 WL 2240563, at *2 (D.N.J. May 24, 2019) (discussing the FSA).  A primary goal of the FSA is to reduce recidivism of federal prisoners upon their release from imprisonment.  18 U.S.C. § 3632(a).  Under the FSA, BOP was required to develop "a risk and needs assessment system" for federal prisons and to tailor recidivism-reduction programming to each inmate's "specific criminogenic needs."  18 U.S.C. § 3632(a)(3).  Thus, BOP developed the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" or "PATTERN" system.  *DeFoggi v. United States*, No. 20-3889-NLH, 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020).  The PATTERN tool "determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk."  *Id.* (internal quotation marks omitted).  The FSA required BOP to complete an initial PATTERN assessment of each inmate and "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination" within 180 days of the system's release date, January 15, 2020.  18 U.S.C. § 3621(h)(1)(A).

"As is apparent from the overall statutory language, the obvious purpose of Congress—in providing for these time credits—was to provide an incentive for

prisoners to attend the recidivism reduction programs Congress was devising….”
*Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730, at *3 (11th Cir. May 7,
2024).  Eligible inmates who “successfully participate in recidivism reduction
programs or productive activities” earn time credits, which may be “applied toward
time in prerelease custody or supervised release.”  18 U.S.C. § 3632(d)(4)(C); 28
C.F.R. § 523.44(b).  Time credits applied toward early supervised release result in a
shorter duration in BOP custody.  *Guerriero*, 2024 WL 2017730, at *3.  Prerelease
custody consists of home confinement or a residential reentry center (“RRC”) in a
BOP-sponsored facility.  18 U.S.C. § 3624(g)(2)(A)-(B).

Operating under interim rules, on November 25, 2020, BOP issued a Notice of
Proposed Rulemaking, seeking to implement and clarify provisions for earning and
application of FSA time credits.[2]   After a period for public comment, on January 19,
2022, BOP published its final rule (the “Final Rule”).[3]  Under the Final Rule,
inmates who have “maintained a consistent minimum or low risk of recidivism over
the most recent two consecutive risk and needs assessments conducted by the
Bureau” earn 15 days of time credits for every 30 days they successfully participate in
programming, and individuals with a medium or high PATTERN score earn 10 days
of credits for every 30 days.  28 C.F.R. § 523.42(c)(1)-(2); 18 U.S.C. § 3632(d)(4)(A).

---

[2] Federal Register, FSA Time Credits,
https://www.federalregister.gov/documents/2020/11/25/2020-25597/fsa-time-credits (last visited August 2, 2024).

[3] 87 Fed. Reg. 2705, codified at 28 C.F.R. § 523.40 *et seq.* (Subpart E - First Step Act Time Credits).

The FSA permits eligible inmates to earn time credits toward early transfer to supervised release, capped at a one-year maximum.  18 U.S.C. § 3624(g)(3).  For eligible inmates, additional time credits are applied toward prerelease custody placement in either an RRC or home confinement.  (Declaration of Cyntrena Cross-Peart ("Cross-Peart Decl."), Ex. 3, Dkt. No. 8-1.)

In addition to the Final Rule governing the FSA, BOP amended its Program Statement 5410.01 ("PS 5410.01")[4] to set internal policies and practices implementing the award of FSA time credits.  The policies define the statutory term "successfully participate" in FSA recidivism reduction programs and activities by excluding the following:

> (i) Inmates in Disciplinary Segregation status will not be considered to be "successfully participating." Inmates in restrictive housing for Administrative Detention shall obtain [time credits] if they otherwise remain in earning status under the policy[;]
>
> (ii) Designation status outside the institution (e.g., for extended medical placement in a hospital or outside institution, an escorted trip, a furlough, etc.);
>
> (iii) Temporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.) In the case of placement or transfers outside the institution (e.g., furlough, writ, escorted trip, outside hospital placement, etc.), an inmate will continue to earn [time credits] if they are in the institution for any part of the day.
>
> (iv) Placement in mental health/psychiatric holds; or

---

[4] Available at Federal Bureau of Prisons, Policy & Forms, https://www.bop.gov/resources/policy_and_forms.jsp.

(v) "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment). An inmate is considered to be opting out, and therefore, is not in earning status, if the inmate refuses or declines to participate in any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. Further, an inmate is considered to be opting out if the inmate refuses to participate in or fails to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's assessment system.

PS 5410.01 at 4-5, *supra*, n. 4.  While participation in time-credit earning programs is voluntary, "opting out" can result in loss of the ability to earn time credits.

### B.   BOP's Calculation of Petitioner's FSA Time Credits

On December 2, 2023, Petitioner had accrued over 1,005 programming days, earning 485 days of FSA time credits.  (Cross-Peart Decl. ¶ 11 and Ex. 3, Dkt. Nos. 8-1.)  BOP applied 365 days of credit toward Petitioner's early transfer to supervised release, which resulted in a change to Petitioner's release date from October 14, 2031, to October 14, 2030.  (*Id.* ¶¶ 11-12 and Ex. 2-3.)  BOP applied the remaining 120 days of time credits toward Petitioner's early transfer to prelease custody.  (*Id.*, Ex. 3.)

BOP disallowed Petitioner 802 programming days during periods when Petitioner was not eligible to earn time credits.  (*Id.* ¶ 13 and Ex. 3.)  During the period when Petitioner was incarcerated at FCI Oakdale, from March 8, 2019, through December 4, 2020, BOP disallowed Petitioner 637 programming days because he was in "refusal status" for BOP's Inmate Financial Responsibility

Program ("FRP").  (*Id.*, ¶ 14 and Ex. 3.)  The FRP assists inmates in satisfying their

financial obligations, such as special assessments under 18 U.S.C. § 3013, court-

ordered restitution, fines and court costs, student loans, or tax liabilities.[5]  Although

the program is voluntary, if an inmate refuses to participate in the program, "the

inmate will not earn [time credits]."  PS 5410.01 at 11, *supra* n. 4.  Petitioner was also

disallowed 165 programming days when he was in transit outside the federal facility

during the following periods:  April 3, 2021 to April 27, 2021; November 13, 2021 to

November 30, 2021; and June 29, 2022 to October 31, 2022.  (*Id.* ¶¶ 15-17 and Ex.

3.)

## C.    Disallowed FSA Time Credits

### 1.    The Parties' Arguments

In Ground One of the Petition, Petitioner challenges the BOP's refusal to

credit him for 802 programming days based on the definition of "successful

participation" adopted by BOP in PS 5410.01.  (Memorandum of Law in Support of

Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petr's Mem.,

Dkt. No. 1-7 at 2.)  Even if BOP has authority to disallow time credits for reasons

not specified in the FSA, Petitioner asserts BOP advised inmates they had until

December 31, 2022, to rectify any discrepancies.  (*Id.*)  By the time Petitioner learned

that BOP considered him in "refusal status," he had been transferred from FCI

---

[5] Inmate Financial Responsibility Program, BOP Program Statement No. P5380.08 at 1, 5-8, available at https://www.bop.gov/policy/progstat/5380_008.pdf (last visited Aug. 2, 2024).

Oakdale to FCI Fort Dix and could no longer rectify the situation.  (*Id.*)  Petitioner's case manager told Petitioner that BOP Central Office would take care of the erroneous FRP refusal, but it did not.

Respondent opposes relief on Ground One of the petition for lack of habeas jurisdiction, which traditionally requires a challenge to the fact or duration of a petitioner's confinement.  (Answer, Dkt. No. 8 at 18.)  Respondent argues that under the FSA, BOP has discretion to apply time credits toward either prerelease custody (which does not affect the duration of confinement) or early transfer to supervised release (which affects the duration of confinement.  (*Id.* at 19, citing 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.44(b) ("[T]he Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. § 3624(g) . . . .")).  Prerelease custody includes home confinement or a residential reentry center ("RRC") (sometimes called a "halfway house") in a BOP sponsored facility.  (*Id.*, citing 18 U.S.C. § 3624(g)(2)(A)-(B)).  Supervised release, on the other hand,  "commences on the day the person is released from imprisonment . . . ."  (*Id.*, citing 18 U.S.C. § 3624(e); *United States v. Johnson*, 529 U.S. 53, 57 (2000) ("[S]upervised release does not run while an individual remains in the Bureau of Prisons' custody."))

Respondent contends, under the FSA, there is no guarantee that any time credits earned will necessarily affect the length of an inmate's term of incarceration and lead to early supervised release, and thus, habeas jurisdiction is lacking. (Answer, Dkt. No. 8 at 20.)  Moreover, Respondent maintains that granting

Petitioner relief here would not result in his speedier release because BOP has already applied 365 days of time credits toward Petitioner's early transfer to supervised release, the maximum number of credits permitted under 18 U.S.C. § 3624(g)(3). (*Id.* at 20-21.) Therefore, BOP may only apply Petitioner's remaining credits toward prerelease custody, which affects only his conditions of confinement, not the duration of his term of imprisonment in BOP custody. (*Id.* at 21.)

In reply, Petitioner invokes the Administrative Procedures Act, and challenges BOP's statutory interpretation of the FSA. (Reply Brief, Dkt. No. 9 at 2.) Specifically, Petitioner argues FSA does not exclude inmates from earning time credits due to prison transfers, failure to participate in RDAP, FRP or work programs, etc. (*Id.*) Therefore, BOP has not applied the FSA as Congress intended and has also violated the Administrative Procedure Act ("APA") when calculating inmates' FSA time credits. (*Id.*)

Furthermore, Petitioner denies that he refused to participate in FRP at FCI Oakdale, which was the basis for denying him 637 FSA programming days. (*Id.*) When Petitioner was informed that inmates had until the end of November 2022, to correct any refusal or opt-out mistakes in their records, he notified his Case Manager at FCI Fort Dix of the mistake. (Reply Brief, Dkt. No. 9 at 2-3.) His case manager agreed to rectify the mistake, but he did not. (*Id.* at 3.) By granting him an additional programming days, Petitioner contends he would be eligible for halfway house and/or home confinement more than one year earlier, resulting in his speedier release from prison, and conferring habeas jurisdiction over this claim. (*Id.* at 3.)

8

After filing his reply brief, Petitioner submitted several letters advising the Court of recent decisions regarding the FSA and deference to agency statutory interpretations. In *Yufenyuy v. Warden FCI Berlin*, No. 22-443-AL (D.N.H. Mar. 7 2023) the district court held that BOP's policy excluding FSA programming eligibility for days spent in transit or transfer outside BOP custody was contrary to the FSA. (Letter, Dkt. No. 11.) Petitioner also cited the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2263 (2024), holding "[t]he deference that *Chevron*[6] requires of courts reviewing agency action cannot be squared with the APA." Finally, Petitioner submitted several letters (Dkt. Nos. 11, 15, 18) advising the Court of BOP's failure to schedule him for a colonoscopy after he had positive fecal occult blood tests. As this Court noted in an Order on May 17, 2024 (Dkt. No. 13), Petitioner's medical claims challenge his conditions of confinement and must be brought in a separate civil action. (Order, Dkt. No. 13.)

## 2.   Habeas Corpus

Traditional habeas relief under 28 U.S.C. § 2241 by a prisoner in federal custody is available "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." *Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002). Under certain circumstances, habeas relief may also be available to challenge the execution of a sentence. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005); *see also Vazquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012) ("Vasquez may

---

[6] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 838 (1984).

resort to federal habeas corpus to challenge a decision to limit his RRC placement");
*Hussain v. Warden, Allenwood FCI*, 2023 WL 2643619, at *2 (holding the district court
was "arguably correct" that it had habeas jurisdiction to determine whether BOP
abused its discretion in connection with a CARES Act home confinement decision
under 18 U.S.C. § 3621(b)).  In Grounds One and Two of the habeas petition,
Petitioner alleges BOP abused its discretion under the FSA by refusing to apply
additional time credits toward Petitioner's early transfer to home confinement or an
RRC.  As in *Woodall* and *Vazquez*, Petitioner is challenging BOP statutory
interpretations concerning prerelease custody, which had the effect of limiting the
amount of time he would spend serving his sentence in an RRC or home
confinement.  As such, the Court has habeas jurisdiction to determine whether
BOP's execution of Petitioner's sentence involved an abuse of discretion.

> **a.**   **Disallowance of 637 programming days for FRP refusal**

Petitioner contends BOP abused its discretion by disallowing him FSA-
programming days from March 8, 2019 through December 4, 2020, based on an
erroneous determination that Petitioner refused to participate in the FRP program at
FCI Oakdale.  (Pet., Dkt. No. 1-7 at 2-3.)  According to Petitioner, he never refused
to participate in the FRP program, BOP has no evidence that he refused to
participate, his transfer to FCI Fort Dix prevented him from rectifying his refusal
status with FCI Oakdale, and his case manager at FCI Fort Dix assured him BOP's
mistake would be corrected by BOP Central Office, but the mistake was not
corrected.

In opposition to relief on Ground One of the petition, Respondent submitted the Declaration of Cyntrena Cross-Peart, Senior Attorney Advisor at FCI Fort Dix. ("Cross-Peart Decl.", Dkt. No. 8-1.)  In reliance on a computerized-index maintained in the ordinary course of business by BOP, Ms. Cross-Peart indicates that Petitioner was disallowed 637 days FSA time credits from March 8, 2019 through December 4, 2020, because he was in FRP refusal status.  (*Id.* ¶ 14 and Ex. 3.)  While the report indicates Petitioner was in FRP refusal status, it does not indicate how BOP determined his refusal status, or whether BOP afforded Petitioner the opportunity to correct the FRP refusal status, assuming it was erroneous.  On this record, the Court is unable to determine whether BOP abused its discretion. Therefore, the Court will conduct an evidentiary hearing on Ground One of the petition.

### b.    Time credits earned with minimum PATTERN score

In Ground Two of the petition, Petitioner challenges BOP's application of only 10 days of FSA time credits per month, rather than 15 days per month, for the period from December 21, 2018 through July 17, 2019.  (Petr's Mem., Dkt. No. 1-7 at 3.)  BOP denied the additional days because Petitioner did not have two consecutive minimum PATTERN scores.  (*Id.*)  Petitioner contends his pre-FSA [December 21, 2018] risk assessments should have been taken into account in determining whether he had two consecutive assessments where his risk of recidivism score did not increase.  (*Id.*)

This claim of BOP abuse of discretion fails on the merits.  The FSA provides,

in relevant part:

> (A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

FSA became effective on December 21, 2018.  FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194.  Prior to the FSA enactment, the risk and needs assessment system, evidence-based programming and productive activities, and FSA time credits were not in existence.  Therefore, it was not an abuse of discretion for BOP to determine an inmate must have two consecutive minimum or low PATTERN scores beginning December 18, 2018, before an inmate could earn 15 days of time credits per month.  *See, e.g.*, *Jun v. Eischen*, No. 22-cv-2704 (JWB/ECW), 2023 WL 5899128, at *1 (D. Minn. Sept. 11, 2023) (rejecting theory of retroactive time credits).  Therefore, Petitioner is not entitled to habeas relief on Ground Two of the petition.

### 3.    The Administrative Procedure Act

For sake of completeness, the Court will address Petitioner's claims challenging BOP's implementation of the FSA in PS 5410.01 under the Administrative Procedure Act.  Petitioner contends PS 5410.01 is improper because it contains specific exclusions, not found in the statute, defining "successful participation" in FSA time credit earning programs and activities.

"The federal question statute, 28 U.S.C. § 1331, provides federal courts with jurisdiction to review agency actions." *Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 525 (3d Cir. 2018); *Califano v. Sanders*, 430 U.S. 99, 105 (1977) (holding 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action, … subject only to preclusion-of-review statutes created or retained by Congress.")  In general, judicial review is available under the APA for "final agency action[s] for which there is no other adequate remedy in a court[.]" *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 179–80 (3d Cir. 2019) (quoting 5 U.S.C. § 704)). "For an agency action to be final under the APA, the action must mark the consummation' of the agency's decision-making process, and the action must determine a 'right[ ] or obligation[ ].'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted)).  "The 'final agency action' requirement … goes to whether there is a cause of action under the statute that provides for judicial review of a given agency determination." *Wayne Land & Min. Grp. LLC*, 894 F.3d at 525.

BOP "Program Statements are 'internal agency guidelines,' rather than 'published regulations subject to the rigors of the Administrative Procedure Act,' …

and thus [they] 'do not create entitlements enforceable under the APA.'" *Solan v. Zickefoose*, 530 F. App'x 109, 112 (3d Cir. 2013) (quoting *Reno v. Koray*, 515 U.S. 50, 61 (1995)) (citing *Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011)).  Program Statements "can be altered at will," and, therefore, are "not subject to rule-making proceedings so as to create a right [to judicial review] under the [APA]." *Robinson*, 631 F.3d at 842; *Ford v. Bureau of Prisons*, No. 12-0873, 2013 WL 5603587, at *16 (M.D. Pa. Oct. 11, 2013), *aff'd*, 570 F. App'x 246 (3d Cir. 2014).  Therefore, Petitioner's challenge to the BOP's interpretation of the FSA statutory term "successful participation" in P.S. 5410.01 fails to state a claim under the APA.

### D.    CARES Act Home Confinement

For his third ground for relief, Petitioner argues BOP should apply his 365 days of FSA time credits toward his percentage of statutory time served, for purposes of eligibility for home confinement under the CARES Act.  (Mem. of Law in Supp. of Pet., Dkt. No. 1-7 at 3-4.)  Relatedly, in Petitioner's sixth ground for relief in his supplemental petition, he challenges BOP's determination that he is not eligible for home confinement under the CARES Act.  (Supp. Pet., Dkt. No. 2 at 2-3.)

Respondent submits that this Court lacks jurisdiction to consider Petitioner's claim regarding BOP's decision to deny him home confinement placement under the CARES Act for several reasons.  (Answer, Dkt. No. 8 at 22-28.)  The Court need address only Respondent's contention that Petitioner's CARES Act home confinement claim is moot because the CARES Act's expansion of 18 U.S.C. § 3624(c)'s home confinement provision expired when the COVID-19 emergency

ended.  (Answer, Dkt. No. 8 at 22-23.)

The relevant language in the CARES Act, PL 116-136, 134 Stat 281, SEC. 12003(b)(2), provides:

> (2) HOME CONFINEMENT AUTHORITY.—During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

The term "covered emergency period" means the period beginning on the date on which the President declared a national emergency under the National Emergencies Act (50 U.S.C. 1601 *et seq.*), with respect to the COVID-19 pandemic, and ending on the date that is 30 days after the date on which the national emergency declaration terminates.  *Id.*  President Biden terminated the CARES Act national emergency period on April 10, 2023.  Pub. L. No. 118-3, 137 Stat. 6 (04/10/2023).  "Accordingly, the CARES Act's home confinement authority ended 30 days later on May 11, 2023."  *Ahmed v. Otisville*, No. 23-454, 2023 WL 9113089, at *3 (S.D.N.Y. Dec. 13, 2023).  "[B]ecause the covered emergency period has terminated, the BOP does not presently have authority to newly transfer inmates to home confinement under the CARES Act."  *Id.*; *see also Perry v. Knight*, No. CV 23-1064 (RMB), 2023 WL 7280553, at *2 (D.N.J. Nov. 2, 2023) ("There is no statutory basis for the BOP to make a *nunc pro tunc* designation under the CARES Act after the end of the covered period"); *Rodriguez-Rabin v. Wingfield*, No. 23-1, 2024 WL 2835502, at *3

(N.D. Fla. Feb. 7, 2024), *report and recommendation adopted*, 2024 WL 2834004 (N.D. Fla. June 4, 2024) ('any claim regarding the application of the CARES Act has been rendered moot by the expiration of the Act[.]")  "If developments occur during the course of adjudication that … prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996).  Moreover, CARES Act home confinement determinations were explicitly within the discretion of the BOP, and not subject to judicial review under the APA.  *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *4 (11th Cir. Feb. 6, 2023) ("Notably, § 3625 expressly exempts the BOP's prisoner-placement and prerelease-custody decisions, including home confinement, from judicial review under the Administrative Procedures Act (APA), *see* 18 U.S.C. § 3625[.]")  Therefore, Grounds Three and Six of the petition are moot, and alternatively, not subject to judicial review under the APA.

### E.   BOP's Determination of PATTERN Score and Application of Public Safety Factor

#### 1.   Habeas Jurisdiction

In his fourth ground for relief, Petitioner challenges BOP's application of a public safety factor ("PSF") on his security classification.  (Petr's Mem., Dkt. No. 1-7 at 4.)  Petitioner was charged with violating 18 U.S.C. § 876, mailing threatening communications, which is not on BOP's list of violent crimes.  (*Id.*)  The PSF precludes Petitioner from transferring closer to home or to a prison camp.  (*Id.*)  In his fifth ground for relief, Petitioner seeks a change in his PATTERN score, after the

public safety factor is removed from his security classification.  (*Id.*)

Respondent argues the Court lacks jurisdiction to consider Petitioner's claims regarding his PSF because BOP has the sole responsibility to designate an inmate's place of imprisonment based on an individualized analysis.  (Answer, Dkt No. 8 at 26, n. 9, citing 18 U.S.C. § 3621(b)).  In his reply brief, Petitioner maintains that Respondent failed to respond to this ground for relief.  (Reply Brief, Dkt. No. 9 at 3.) Respondent, however, challenged the Court's jurisdiction to entertain Petitioner's challenges to BOP's custody classification.

Prison security classifications are ordinary incidents of prison confinement that do not implicate a liberty interest under the Due Process Clause.  *See Briley v. Att'y Gen. U.S.*, 632 F. App'x 84 (3d Cir. 2016) (holding prisoner's challenge to his custody classification was not cognizable under § 2241); *see Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 58 (3d Cir. 2007) (citing *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir.2002) ("The Due Process Clause does not … subject … prison authorities to judicial oversight as long as the degree of confinement … [is] within the sentence imposed and do[es] not otherwise violate the Constitution")); *see Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs] … and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process")); *see, e.g., Becerra v. Miner*, 248 F. Appx. 368, 370 (3d Cir. 2007) (holding that inmate could not invoke habeas corpus to challenge BOP's designation of a public safety factor)).

17

This Court, however, assumes habeas jurisdiction over Petitioner's challenge to the execution of his sentence.  "[T]he BOP abuses its discretion if it fails to recognize and exercise the discretion available to it to decide a prisoner's claim for relief." *Sills v. FCI Talladega Warden*, No. 22-12656, 2023 WL 1775725, at *5 (11th Cir. Feb. 6, 2023) (citing *Barden v. Keohane*, 921 F.2d 476, 481, 483 (3d Cir. 1990)). Petitioner contends 18 U.S.C. § 876, his crime of conviction, is not on the list of violent crimes outlined in BOP's internal policies governing security classifications. (Petr's Mem., Dkt. No. 1-7 at 4.)  Petitioner did not identify the specific public safety factor applied to his security classification.

Pursuant to 18 U.S.C. § 3621(b), the Bureau of Prisons shall designate the place of imprisonment for each prisoner committed to its custody, taking into account, *inter alia*, "the history and characteristics of the prisoner."  Based on this statutory authority, after enactment of the First Step Act, the BOP created Program Statement 5100.08 (2019) "Inmate Security Designation and Custody Classification Manual." Chapter 5 discusses Public Safety Factors.  One of the public safety factors is "Threat to Government Officials" code "G."  *Id.*, Chapter 5, p. 13.  Application of this factor results in a low inmate security level and 0-10 security points.  *Id.*, Table 5-2 at p. 12.  There is no public safety factor for "history of violence." *Id.*  Assuming Petitioner's public safety factor is based on a threat to a government official,  BOP did not abuse its discretion in applying this PSF based on Petitioner's conviction

under 18 U.S.C. § 876(c)[7], because the target of the threatening communication was a federal judge.[8]  *See*, *Day v. Nash*, 191 F. App'x 137, 140 (3d Cir. 2006) (holding BOP determination of sex offender public safety factor was not arbitrary or an abuse of discretion where there was no evidence that lewd and lascivious charge in PSI had been dismissed or nolle prosequi.)  The Court denies Ground Four of the habeas petition.

The Court turns to Petitioner's challenge to his PATTERN score, in Ground Five of the petition.  "The DOJ issued the risk and needs assessment tool, PATTERN, on July 19, 2019."  *Booker v. Williams*, No. 21-CV-00215-JPG, 2022 WL 4314362, at *1 (S.D. Ill. Sept. 19, 2022).[9]  "The FSA does not prescribe what factors DOJ must use to determine recidivism risk – it only calls for a categorization as minimum, low, medium, or high risk."  *Id.* at *2; 18 U.S.C. § 3621(h)(6).

> For males, PATTERN includes fifteen factors: an inmate's current age; whether he has a Walsh conviction and/or committed a violent offense; his criminal history points; history of escapes and/or violence; education score, such as whether the inmate is enrolled in a GED program or has the equivalent of a high school diploma; completion of drug treatment programs; all incident reports in the past 120 months, whether any were serious, and time period

---

[7] *United States v. Kowalewski*, No. 22-cr-00538, ECF Nos. 1, 28 (D.S.C.), available at www.pacer.gov.

[8] If another PSF was applied, Petitioner may file a motion for reconsideration, identifying the specific public safety factor determination he is challenging.

[9] See https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (last visited August 22, 2024).

> since last incident report; whether the inmate agreed to
> participate in the financial responsibility program; and the
> number of eligible activities and work programs the inmate
> completed.

*Steelman v. FCI Beckley Warden*, No. 5:23-CV-00599, 2024 WL 1781909, at *3

(S.D.W. Va. Apr. 5, 2024), *report and recommendation adopted*, No. 5:23-CV-00599,

2024 WL 1769948 (S.D.W. Va. Apr. 24, 2024).[10]  The various factors are assigned

point values, with the total score determining four recidivism risk categories:

minimum, low, medium, or high.  *Id.*

The PATTERN tool does not appear to contain a definition of "history of

violence."  In Petitioner's case, BOP determined his conviction under 18 U.S.C. §

876(c) constituted a history of violence.  In an unpublished decision, the Third

Circuit joined the Fifth, Seventh, Eighth, and Ninth Circuits in finding that 18

U.S.C. § 876(c) is a crime of violence under U.S.S.G. § 4B1.2(a)(1).  *United States v.

Muniz*, 637 F. App'x 65, 69 and n. 5 (3d Cir. 2016) *cert. denied,* 578 U.S. 987 (May 16,

2016).  This caselaw provides a non-arbitrary basis for BOP to determine a

conviction under 18 U.S.C. § 876(c) constitutes a history of violence.  Therefore,

BOP did not abuse its discretion in implementing a recidivism risk assessment tool

that permitted BOP to add points to Petitioner's risk assessment based on history of

violence for his conviction under 18 U.S.C. § 876(c).

---

[10] Citing Male PATTERN Risk Scoring, at
https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3

### 2.    Administrative Procedure Act Claim

Having addressed Petitioner's habeas claims concerning the execution of his sentence, the Court turns to Petitioner's claims under the Administrative Procedure Act.  Petitioner may not challenge BOP's determination of his security classification and his PATTERN Score under the APA.  Congress, by enacting 18 U.S.C. § 3625, explicitly precluded judicial review under the APA over certain "prisoner claims challenging security classifications, housing designations, and similar decisions made by the BOP." *Landis v. Moyer*, 610 F. Supp. 3d 649, 656 (M.D. Pa. 2022), *aff'd*, No. 22-2421, 2024 WL 937070 (3d Cir. Mar. 5, 2024) (citations omitted).  Specifically, judicial review is precluded under the APA for BOP determinations under 18 U.S.C. § 3621, involving place of imprisonment, and § 3624, involving release of prisoners. 18 U.S.C. § 3625.  Both security classifications and PATTERN scores are determined by BOP under §§ 3621 and 3624.  *See Brown v. Holzapfel*, No. 5:24-CV-00062, 2024 WL 3264795, at *4 (S.D.W. Va. June 6, 2024), *report and recommendation adopted*, No. 5:24-CV-00062, 2024 WL 3258279 (S.D.W. Va. July 1, 2024) (holding 18 U.S.C. § 3625 precludes judicial review under the APA of PATTERN scores or recidivism risk levels, which are determined under § 3621(h) and § 3624(g)(1)); *see Hicks v. Heckard*, No. 5:23-CV-00581, 2024 WL 833190, at *6 (S.D.W. Va., Feb. 1, 2024), *report and recommendation adopted*, No. 5:23-CV-00581, 2024 WL 818472 (S.D.W. Va., Feb. 27, 2024) ("BOP's decisions concerning [the petitioner's] custodial placement and appropriateness for early release are discretionary decisions that …

are not subject to judicial review"); *see Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *6 (N.D.W. Va., Oct. 27, 2023), *report and recommendation adopted*, No. 5:23-CV-285, 2023 WL 7490046 (N.D.W. Va., Nov. 13, 2023) (holding "individual determinations under § 3624 are not reviewable"); *see Newell v. Fikes*, No. 2:22-CV-53, 2023 WL 2543092, at *2 (S.D. Ga., Feb. 21, 2023), *report and recommendation adopted*, No. 2:22-CV-53, 2023 WL 2541126 (S.D. Ga., Mar. 16, 2023) (holding judicial review under the APA was unavailable because " Newell's requests for a reduction of [] recidivism risk level and whether to award 15 days' credit for every 30 days of participation on EBRR programs falls under the purview of § 3625"); *see Mansfield v. Beeler*, 238 F. App'x 794, 798 (3d Cir. 2007) (noting that the presence of public safety factors determines the type of prison where an inmate will serve his sentence under § 3621).  Petitioner fails to state a cognizable APA claim challenging his public safety factor and PATTERN score.

## II.    CONCLUSION

For the reasons set forth above, the Court will hold an evidentiary hearing on Ground One of the petition, and dismiss in part and deny in part the remainder of the habeas petition, as supplemented.

An appropriate order follows.

**DATE:  August 27, 2024**

<div style="margin-left:auto">

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

</div>